### DEXTER, HORTON & CO. v. SAYWARD et al.

(Circuit Court, D. Washington, N. D. December 20, 1897.)

1. SUPERSEDEAS BOND—LIABILITY OF SURETIES—JUDGMENT IN REM.

The liability of sureties on a supersedeas bond given by a defendant for deterioration of attached property, taxes accruing thereon, and the expense of keeping pending proceedings for review of the judgment, is not affected by the fact that there was no personal judgment against the defendants, where there is a deficiency remaining on the amount found due the plaintiff after sale of the property.

2. SAME—DEFENSE—FAILURE TO PERFECT APPEAL.

That a plaintiff in error failed to take the proper steps to give the appellate court jurisdiction is no defense to liability on his supersedeas bond.

3. JUDGMENT—RES JUDICATA—ACTION ON SUPERSEDEAS BOND.

An order denying a motion for judgment against the sureties for the penalty named in a supersedeas bond is not a bar to an original action on such bond as to the damages held by the opinion rendered to be within its terms.

4. SAME—VALIDITY—FAILURE OF RECORD TO SHOW JURISDICTION ON REMOVAL.

When a circuit court of the United States retains a cause removed from a state court, and it proceeds to judgment, the parties appearing, and the case is carried to the circuit court of appeals, which renders a decision on the

merits, and issues a mandate directing the manner of further proceedings by the circuit court, the judgment of the appellate court is binding on the parties and the circuit court unless it is impossible to give it effect without violating the constitution, and the circuit court cannot declare it void in a collateral action, though the record fails to show the facts necessary to warrant the removal.

This is an action by Dexter, Horton & Co., a corporation, against W. P. Sayward, Malcolm McDougall, and Mary McDougall, on a supersedeas bond. Heard on demurrer to the answer.

Blaine & De Vries, for plaintiff.

Alfred Battle and Donworth & Howe, for defendants.

HANFORD, District Judge. This action is ancillary to the case of Dexter Horton & Co. v. Sayward (No. 135, in this court), and is founded upon a supersedeas bond executed by the defendants, and filed in the original case, to stay execution upon the judgment pending a hearing of the cause in the circuit court of appeals. This court has heretofore ruled, upon a motion in the original case, that the obligors did not, by said bond, become liable for the judgment, but only for costs and damages, including any loss to the plaintiff by deterioration in value of the property under attachment in the original case, and accumulation of taxes on said property during the time execution was stayed. 79 Fed. 237. As the damages could not be properly ascertained in a proceeding by motion in the original case, the plaintiff commenced this action, alleging in its complaint that, after the judgment of this court had been affirmed by the circuit court of appeals (19 C. C. A. 176, 72 Fed. 758), and the issuance of its mandate by the appellate court, the property theretofore held under attachment was sold for the sum of $38,817.11, under a writ of execution, leaving a deficiency upon the judgment exceeding the amount of the penalty of the bond sued on herein; that during the pendency of the case in the appellate court the costs and expenses of keeping the attached property in the custody of the marshal amounted to the sum of $3,834, and the market value of the property depreciated in the sum of $100,000, and there was depreciation in value for want of repairs to an amount exceeding $30,000, and taxes accrued to the amount of $11,000; and that the costs taxed in plaintiff's favor in the circuit court of appeals, amounting to $20, have not been paid. By their answer, the defendants Malcolm McDougall and Mary McDougall, who executed the supersedeas bond as sureties, have set up four separate affirmative defenses as follows: (1) That the defendant Sayward is, and was during the pendency of the original action, nonresident of, and absent from, the state of Washington; that the summons in said cause was not served upon him personally, and that his appearance in said action was special, and only for the purpose of protecting his property in this state, which was attached in said action; and that the court did not acquire jurisdiction to render a personal judgment against said defendant. (2) That the circuit court of appeals never acquired jurisdiction of said action, for the reason that the writ of error therein was not filed in the office of the clerk of this court. (3) That the issues tendered by the complaint in this

action were fully adjudicated and finally determined by the ruling of this court upon the motion made in the original action for a deficiency judgment against the obligors upon the bond sued on herein. (4) That the original action by the plaintiff against the defendant Sayward was commenced in the superior court of the state of Washington for King county; that said defendant filed a petition and bond for removal of said action into this court; that said superior court made an order denying the prayer of said petition, and refused to surrender its jurisdiction; that said defendant then procured a certified transcript of the record, and filed the same in this court; that writs of attachment were issued out of said superior court, and property of the defendant was levied upon by the sheriff, to whom said writs were directed, which property was, after the filing of said transcript in this court, delivered by said sheriff into the custody of the United States marshal; that the debt for the recovery of which said action was brought accrued in favor of the firm of Harrington & Smith, composed of William A. Harrington, a citizen of the state of Washington, and Andrew Smith, a citizen of the state of California, of which state the defendant William P. Sayward was also a citizen at the time of the commencement of said action; that the right of action to recover said debt was assigned by Harrington & Smith to the plaintiff; that said original action was not removable from said superior court into this court for the reason that this court would not have had original jurisdiction, if no assignment of the right of action had been made, because one of the assignors and said defendant Sayward were, at the time of the commencement of said action, citizens of the same state; that the records in the superior court show that the plaintiff commenced said action as assignee, and that it does not appear by the petition for removal of said action into this court, nor in any part of the record of the superior court, that there was any diversity of citizenship between the assignors of said right of action and the defendant Sayward; and that said superior court was never devested of its jurisdiction, and this court never acquired jurisdiction of said action.    To each of these affirmative defenses the plaintiff has demurred.

The first three defenses appear to me to be without merit.    The first questions the validity of the judgment in the original action, regarding it merely as a personal judgment against the defendant Sayward.    But the judgment is in rem against the attached property, as well as in personam.    Without having jurisdiction to render a personal judgment, a court within this state, having superior and general jurisdiction, may render a valid judgment in an attachment suit which will be binding upon nonresident and absent defendants, so far as to subject property of such defendants situated within this state to the process of the court, and direct a sale thereof for the payment of debts.    The liability of the defendants is created by the bond which they signed, and is not dependent upon the validity of the judgment as creating a personal liability of the defendant Sayward. Even though he might not be, by force of the judgment, liable for any deficiency remaining after a sale of the attached property and appli-

cation of the proceeds to the payment of the judgment, still, if the plaintiff sustained loss by the deterioration or destruction of the attached property, or the accumulation of taxes thereon, the obligors are, by the terms of their bond, liable to the plaintiff for such losses.

But few words are required to dispose of the second defense. If the defendant Sayward failed to cause everything to be done necessary to lodge the case in the circuit court of appeals, then he did not prosecute his writ of error to effect, and that failure constitutes a breach of the obligation which the defendants entered into, and renders them liable.

The ruling upon the motion in the original case for a deficiency judgment against the obligors on this bond is certainly no bar to the prosecution of this action for the recovery of such damages as, by the opinion rendered upon the hearing of that motion, this court held to be within the indemnity of the bond. The plaintiff may be claiming too much. But the complaint is not, for that reason, obnoxious to a general demurrer.

The argument to sustain the fourth defense is that the superior court did have undoubted jurisdiction of the original case; that said court could not be devested of its jurisdiction by removal of the cause into the federal court in any manner other than as provided by the statute; that no inquiry into or ascertainment of facts not shown by the record at the time of removal of the cause can be presumed, for the transfer of jurisdiction from one court to the other cannot take place until the record shows that the steps necessary to effect the transfer have been taken in accordance with law, and, as two courts cannot have jurisdiction of the same cause at the same time, no act of the parties, or proceedings in the federal court, can create federal jurisdiction until the state court has been devested of its jurisdiction. The defendants are fortified in their position by decisions of the supreme court holding that in cases removed from state courts into United States circuit courts the facts essential to the right of removal must be shown affirmatively by the record, before the removal takes place: that a defective record deprives a United States circuit court of jurisdiction of a case removed from a state court, even though the necessary facts do exist; and its final judgment, although rendered after the parties have voluntarily submitted their cause to its determination, is coram non judice. Amory v. Amory, 95 U. S. 186; Insurance Co. v. Pechner, Id. 183; Stone v. South Carolina, 117 U. S. 430, 6 Sup. Ct. 799; Carson v. Hyatt, 118 U. S. 279, 6 Sup. Ct. 1050; Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173; Stevens v. Nichols, 130 U. S. 230, 9 Sup. Ct. 518; Crehore v. Railway Co., 131 U. S. 240, 9 Sup. Ct. 692; Jackson v. Allen, 132 U. S. 27, 10 Sup. Ct. 9; Graves v. Corbin, 132 U. S. 571, 10 Sup. Ct. 196. The argument for the defense also assumes that all removed cases, where the record does not show affirmatively that the United States court did have jurisdiction, are in the same situation as cases wherein the record does show affirmatively that the court did not have jurisdiction. It is insisted that there is a wide distinction to be observed between causes commenced originally in a United States

circuit court and cases which were originally commenced in a state court; that in the former, if the record is silent, jurisdictional facts may be presumed to exist, but in the latter the federal jurisdiction depends entirely upon a sufficient record showing affirmatively the facts necessary to warrant removal of the cause from the state court into the federal court. And it is shown by the decisions of the supreme court that, where it appears affirmatively by its own record that a court did not have jurisdiction of the cause, its judgment is not merely voidable, but is an absolute nullity. Galpin v. Page, 18 Wall. 350; Windsor v. McVeigh, 93 U. S. 277; Pennoyer v. Neff, 95 U. S. 714; Settlemier v. Sullivan, 97 U. S. 444; In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164; In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482; Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841. It is also shown by the decisions of the supreme court that, where the plaintiff sues as assignee of a chose in action, if the federal jurisdiction depends upon diversity of citizenship of the parties, it is necessary to show the citizenship of the assignors as well as the parties to the suit, and, unless it appears by the record that the suit might have been prosecuted in the federal court if no assignment or transfer of the cause of action had been made, the record is insufficient to show jurisdiction in a federal court. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173; Parker v. Ormsby, 141 U. S. 81, 11 Sup. Ct. 912; Plant Inv. Co. v. Jacksonville, T. & K. W. Ry. Co., 152 U. S. 71, 14 Sup. Ct. 483. In the case of Elliott v. Peirsol, 1 Pet. 328–342, the supreme court gave this rule:

"Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and, whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But, if it acts without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought even prior to a reversal in opposition to them. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers."

That decision has been cited many times in the subsequent decisions of the supreme court, and the rule in the same words has been repeated and approved in Hickey v. Stewart, 3 How. 750–763; Williamson v. Berry, 8 How. 495–565; Thompson v. Whitman, 18 Wall. 457–471; Re Sawyer, 124 U. S. 200–225, 8 Sup. Ct. 482. The rule, as quoted and as applied in the cases referred to, is a mandatory declaration of the law by the highest court in the country, and is broad enough to sweep every judgment of every court of every rank assuming to act without lawful jurisdiction of the parties whose rights are involved or of the subject-matter of the controversy, whether the defect of jurisdiction appears affirmatively on the face of the record or is shown in a collateral proceeding by proof aliunde. In the recent decision of the supreme court in the case of Guarantee Trust & Safe-Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137–151, 11 Sup. Ct. 516, Mr. Justice Brown, in the opinion of the court, quotes with approval from the opinion in Williamson v. Berry as follows:

"It is an equally settled rule of jurisprudence that the jurisdiction of any court exercising authority over a subject may be inquired into in every other

court when the proceedings in the former are relied upon and brought before the latter by a party claiming the benefit of such proceedings. The rule prevails whether the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law."

The foregoing propositions, and the decisions of the supreme court supporting the same, come very near to closing up every way of escape from the conclusion that the judgment of this court, notwithstanding its affirmance by the circuit court of appeals, is an absolute nullity; and, if so, the defense is good, for, if the judgment is a nullity, then the plaintiff cannot be heard to say that it has been damaged by delay in execution of the judgment, or by deterioration of the attached property during the time of such delay.

Some of the decisions of the supreme court in which judgments rendered without jurisdiction are treated as nullities are based upon the fundamental principle of jurisprudence that no person can be deprived of his possessions or rights by legal process until after notice to him of the proceedings against him, and reasonable time and opportunity for him to be heard upon the merits of his case has been allowed. In a case where, by the record of the court, it appears that a party not actually appearing, nor within the territorial limits of its jurisdiction, and not served personally with notice of the pendency of the action, and the procedure prescribed by statute for obtaining jurisdiction of the person by constructive service has not been strictly followed, a judgment against such party is a nullity, because no effect can be given to it without violating the constitutional guaranty that no person shall be deprived of life, liberty, or property without due process of law. This is the doctrine of the decisions in Galpin v. Page, Pennoyer v. Neff, and Settlemier v. Sullivan. For the same reason, when a party against whom proceedings have been instituted, or whose property has been seized in a suit in rem, appears for the purpose of defending himself or his property, and the court refuses to permit him to answer, or be heard upon the merits of his cause, a judgment of the court in such proceeding, after such denial of a hearing, is void, and not entitled to respect under any circumstances. This is the doctrine of the decisions in Windsor v. McVeigh and in Hovey v. Elliott. Other decisions seem to have been shaped by other express provisions of the constitution. For instance, the case of In re Ayers is a case in which the supreme court held a judgment of the United States circuit court for the Eastern district of Virginia, granting an injunction against the attorney general of the state of Virginia to restrain the bringing of certain suits for the collection of taxes, to be absolutely void for the reason that the suit in which the injunction was granted was in fact and in law a suit against the state of Virginia, "jurisdiction to entertain which is denied by the eleventh amendment to the constitution, which declares that the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The case did not turn upon a mere question of practice, but the supreme court felt called upon to give effect to the amendment by declaring a judgment to be void, because the court at

tempted to exercise jurisdiction contrary to the express declaration of the constitution.

There is room to distinguish the case at bar from the cases in which, on constitutional grounds, judgments of courts of superior jurisdiction have been held to be void when assailed collaterally; but I am unable to decide that the fourth defense pleaded in the defendants' answer is not, in law, a bar to the present action, and claim that the decision can be squared with the severe rule given by the supreme court in Elliott v. Peirsol; nor can I find in the decisions of the supreme court any good reason to assign for excepting this case from that rule. Yet I feel compelled, by consideration of other decisions of the supreme court, to sustain the demurrer. I can only say that in Elliott v. Peirsol, and the cases which follow it, the analogy to the case under consideration is not so close or perfect, as I find in the cases hereafter referred to, which are decisions of the supreme court, not overruled, and as binding upon this court as any of the decisions of that court. The case of Des Moines Nav. & R. Co. v. Iowa Homestead Co., 123 U. S. 552–559, 8 Sup. Ct. 217, was a suit brought by the Iowa Homestead Company against the Des Moines Navigation & Railway Company to recover certain taxes which formed part of the subject-matter of the litigation in a case between the same parties which had proceeded to a final decree in the United States circuit court for the district of Iowa, and to a hearing in the supreme court of the United States, resulting in affirmance of said decree. Homestead Co. v. Valley R. R., 17 Wall. 153. The railroad company set up the decree in its favor in the first suit as a bar to the action, and to that defense the homestead company replied "that the decree or judgment referred to is null and void, for the reason that the courts of the United States had no jurisdiction of said suit, and no legal power or authority to render said decree or judgment." The following extracts from the opinion of the court, by Chief Justice Waite, present the exact question in the case, the decision thereof, the grounds upon which it rested, and the authorities relied upon:

"The precise question we have now to determine is whether the adjudication by this court, under such circumstances, of the matters then and now at issue between the homestead company and the navigation and railroad company was absolutely void for want of jurisdiction. The point is not whether it was error in the circuit court to take jurisdiction of the suit, or of so much of it as related to the navigation and railroad company originally, but as to the binding effect of the decree of this court so long as it remains in force, and is not judicially annulled, vacated, or set aside. * * * It was settled by this court at a very early day that, although the judgments and decrees of the circuit courts might be erroneous, if the records failed to show the facts on which the jurisdiction of the court rested, such as that the plaintiffs were citizens of different states from the defendants, yet that they were not nullities, and would bind the parties until reversed, or otherwise set aside. In Skillern's Ex'rs v. May's Ex'rs, 6 Cranch, 267, the circuit court had taken jurisdiction of a suit, and rendered a decree. The decree was reversed by this court on appeal, and the cause remanded, with directions to proceed in a particular way. When the case got back, it was discovered that the cause was 'not within the jurisdiction of the court,' and the judges of the circuit court certified to this court that they were opposed in opinion on the question whether it could be dismissed for want of jurisdiction after this court had acted thereon. To that question the following answer was certified back: 'It appearing that the merits of the cause had been finally decided in this court, and that its mandate

required only the execution of its decree, it is the opinion of this court that the circuit court is bound to carry that decree into execution, although the jurisdiction of that court be not alleged in the pleadings.' That was in 1810. In 1825. McCormick v. Sullivant, 10 Wheat. 192, was decided by this court. There a decree in a former suit was pleaded in bar of the action. To this a replication was filed, alleging that the proceedings in the former suit were coram non judice, the record not showing that the complainants and defendants in that suit were citizens of different states: but this court held on appeal that: 'The courts of the United States are courts of limited, but not inferior, jurisdiction. If the jurisdiction be not alleged in the proceedings, their judgments and decrees may be reversed for that cause on a writ of error or appeal, but, until reversed, they are conclusive between the parties and their privies. But they are not nullities.' There has never been any departure from this rule. It is said, however, that these decisions apply only to cases where the record simply fails to show jurisdiction. Here it is claimed that the record shows there could be no jurisdiction, because it appears affirmatively that the navigation and railroad company, one of the defendants, was a citizen of the same state with the plaintiff. But the record shows with equal distinctness that all the parties were actually before the court, and made no objection to its jurisdiction. The act of 1867, under which the removal was had, provided that, when a suit was pending in a state court, 'in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, * * * such citizen of another state, * * * if he will make and file an affidavit stating that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court, may * * * file a petition in such state court for the removal of the suit' into the circuit court of the United States; and, when all things have been done that the act requires, 'it shall be * * * the duty of the state court to * * * proceed no further with the suit'; and, after the record is entered in the circuit court, 'the suit shall then proceed in the same manner as if it had been brought there by original process.' In the suit now under consideration there was a separate and distinct controversy between the plaintiff, a citizen of Iowa, and each of the citizens of New York, who were defendants. Each controversy related to the several tracts of land claimed by each defendant individually, and not as joint owner with the other defendants. Three of the citizens of New York caused to be made and filed the necessary affidavit and petition for removal, and thereupon—by common consent, apparently—the suit as an entirety was transferred to the circuit court for final adjudication as to all the parties. The plaintiff, as well as the defendants, appeared in the circuit court without objection, and that court proceeded as if its authority in the matter was complete. Whether, in such a case, the suit could be removed, was a question for the circuit court to decide when it was called on to take jurisdiction. If it kept the case when it ought to have been remanded, or if it proceeded to adjudicate upon matters in dispute between two citizens of Iowa when it ought to have confined itself to those between the citizens of Iowa and the citizens of New York, its final decree in the suit could have been reversed, on appeal, as erroneous; but the decree could not have been a nullity. To determine whether the suit was removable in whole or in part or not, was certainly within the power of the circuit court. The decision of that question was the exercise, and the rightful exercise, of jurisdiction, no matter whether in favor of or against taking the cause. Whether its decision was right, in this or any other respect, was to be finally determined by this court on appeal. As the circuit court entertained the suit, and this court, on appeal, impliedly recognized its right to do so, and proceeded to dispose of the case finally on its merits, certainly our decree cannot, in the light of prior adjudications on the same general question, be deemed a nullity. It was, at the time of the trial in the present case in the court below, a valid and subsisting prior adjudication of the matters in controversy, binding on these parties, and a bar to this action."

In Dowell v. Applegate, 152 U. S. 327, 14 Sup. Ct. 611, and Evers v. Watson, 156 U. S. 531, 15 Sup. Ct. 430, the decision in the case of Des Moines Nav. & R. Co. v. Iowa Homestead Co., and the earlier de-

cisions of the supreme court therein cited, have been reaffirmed. Here is a continuous line of decisions of the supreme court extending from the days of Marshall to the present time, from which we may fairly deduce the following rules: The circuit courts of the United States have jurisdiction to decide questions as to their own jurisdiction in cases removed from state courts, and the decision of such questions by a court which has jurisdiction of the parties, if erroneous, is nevertheless binding upon the parties until set aside or reversed by an appellate court, or by an order in a proper proceeding in the same court. The judgment of a circuit court of the United States in a case removed from a state court is binding upon the parties to the same extent as it would be if the case had been commenced therein by original process; and after a circuit court in such a case has entertained jurisdiction, and proceeded to a final judgment, and the case has been carried to an appellate court, and a decision rendered therein upon the merits of the controversy, and after a mandate has been issued, directing the manner of further proceedings in the circuit court, the decision of the appellate court is binding and conclusive upon the parties and upon the circuit court. While it is true that a court may not, by its own judgment, create jurisdiction in its favor which the law has not conferred, and while the parties cannot, by their consent, confer jurisdiction upon a court, it is nevertheless true that, after parties have voluntarily submitted a cause for determination upon its merits, to a court of superior, although limited, jurisdiction, the submission of the cause, and the final judgment of the court, together, do estop the parties from denying in a collateral proceeding that it had jurisdiction, except in cases where it is impossible to give effect to the judgment without violating the constitution. In an opinion of the supreme court by Chief Justice Waite, not found in the official reports, it was held that a party on whose application a case was removed into a United States circuit court could not raise objections to such removal. Seward v. Comeau, 26 Lawy. Co. Ed. 438. This rule of estoppel is also supported by the decision of the supreme court in an opinion by Chief Justice Chase in the case of Bushnell v. Kennedy, 9 Wall. 387–394. In the present case this court cannot deny its jurisdiction to render the judgment referred to in plaintiff's complaint without treating as a nullity the mandate of the circuit court of appeals for the Ninth circuit. An inferior court cannot presume to declare the judgment of an appellate court upon the merits of the cause to be void for want of jurisdiction, and on that ground disregard its mandate, without bringing the administration of justice into utter disrepute. Skillern's Ex'rs v. May's Ex'rs, 6 Cranch, 267; Livingston v. Story, 12 Pet. 339; Chaires v. U. S., 3 How. 511; Whyte v. Gibbes, 20 How. 541. For these reasons, I hold the facts set forth in the fourth defense to be insufficient to constitute a bar to this action. The demurrer to all of the affirmative defenses in the answer is sustained.